UNITED STATES v. ONE LARGE WATER TUB. See Case No. 10,532.

---

## Case No. 15,950.
### UNITED STATES v. ONE PACKAGE OF READY-MADE CLOTHING.
[16 Law Rep. 284.]

District Court, S. D. New York. July, 1853.

COSTS—TO WHAT LIMITED.

1. The act of February 26, 1853 [10 Stat. 161], repealed all antecedent legislation of con-

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

gress on the subject of costs, and changed the existing usages and practice of courts therein, and limited costs to the specific appointments of that statute.

2. The taxation of costs according to former statutes, and the former usage and practice of the court for services not mentioned in the statute, disallowed. The opinion of the attorney general of the United States, contra, not followed.

BETTS, District Judge. This is an appeal from the taxation of the bill of costs of the United States attorney, made by the clerk, and has been brought before the court and submitted to its decision upon arguments, in writing, in behalf of the respective parties. The goods were seized by the collector, as forfeited to the United States, and a libel of information in the usual form was filed to procure their condemnation. The claimant petitioned the secretary of the treasury for a remission of the forfeiture, which was granted upon the condition that the claimant pay the taxable costs in the cause. The United States attorney submitted to the clerk a bill of costs, containing the following items: Retaining fee, $8; drawing information, fol. 12, $3.16; engrossing, $1.58; copy of same, $1.58; counsel perusing and amending, $2.50; drawing, engrossing and copy of report to solicitor of the treasury, $1; motion that marshal return monition, $3; attending on return of monition, $1; drawing, engrossing, and copy of additional report to solicitor of the treasury, $3.62½; drawing, engrossing, and copy report to solicitor of suit pending, $1; drawing costs and attending taxation, $1.25; copy taxed bill to file, $1; drawing, engrossing and copy report of suit decided, $1; drawing and engrossing consent for time to answer, 50c.; proctor's and advocate's fee on motion to bond, $3.62½; discontinuing cause, $5; filing remission, with certificate, $1; two depositions taken and admitted as evidence in the cause, $5. The attorney claimed that by the law as it now stands he was entitled to their taxation to that amount. The claimant of the goods objects to the allowance of any fee or taxation other than $5 for discontinuance of the cause. The clerk taxed $5 for discontinuance and $5 for taking the two depositions, and rejected all the other items of the bill, amounting to $35.82.

The counsel for the claimants insist that the act of February 26, 1853, is peremptory, and excludes the allowance of any costs not specifically given by the statute. The United States' attorney maintains that the act should be interpreted as fixing a compensation only in respect to the particular services designated, and that all other services necessarily performed in a cause are to be compensated according to the law of costs as it stood previous to the enactment of the statute. He offers, in support of this construction of the act of 1853, the official opinion of the attorney-general of the United States, given to the secretary of the interior, on the very point. That opinion is as follows:

"Attorney-General's Office, 16th June, 1853. Sir: In answer to the inquiry of the marshal of the Southern district of the state of New York, referred to me by your note of the 13th ult., I state as follows: The act of congress of February 26, 1853, to regulate the fees and costs to be allowed clerks. marshals, and attorneys of the courts of the United States, provides as marshal's fee 'for transporting criminals, ten cents per mile for himself, each necessary guard and each prisoner.' If the language were 'for transporting prisoners,' it would have disposed of the case presented as a subject of inquiry, namely, that of a witness in custody for safe-keeping; but it does not, and this case is not provided for by the act. It is a casus omissus. I think for such duty—that is, the transportation of a witness in custody—the marshal is entitled to charge the fee of the nearest analogous case, that of transportation of a criminal as allowed by the act of congress, or actual expenses to be certified by the court. The act, it is true, declares at the outset that in lieu of the present compensation of clerks, attorneys, marshals, and others. 'the following and no other compensation shall be allowed.' But this must be understood as the following and no other compensation 'for any services mentioned in this act.' If the attorney, clerk or marshal, is compelled by law to perform a service, or incur a charge, in a matter not specified by the act he is to receive a reasonable allowance therefor, notwithstanding the above-cited phrase of general conclusion. I have the honor to be your obedient servant, [Signed] C. Cushing. Hon. Robert McClelland, Secretary of the Interior."

Although the subject was considered by the court in March term last. and a decision was then made which gave to the act of February, 1853. the effect of excluding all costs to the officers of court which are not specifically appointed by the statute, (Thorne v. The Victoria [Case No. 13.988]). yet I willingly review the point, under the aid of the able argument of the respective counsel, and with the benefit of the opinion of the first law-officer of the government. The exposition put upon the statute by the attorney-general, and which is claimed to be the correct one by the United States attorney, is that it is exclusive or restrictive in respect to the allowance of fees or compensation, only in cases in which a fee or compensation is mentioned in the act; and that, where a service required by law is performed, or a charge is incurred, by an officer of court. in a matter not specified by the act, he is entitled to receive a reasonable allowance therefor, and the measure of compensation pointed out is 'the fee of the nearest analogous case.' In the case of no other officer of court can the justness, and, indeed, necessity, of the principle recognised by the attorney be more strongly illustrated than in respect to the compensation of the United States attorney, and of which the bill of costs now under consideration is one of the feeblest instances. The only items of charge named in the statute, are "for discontinuing the cause," and "depositions taken and admitted as evidence," neither of them requiring the personal action or even attendance of the United States attorney, and which are acts ordinarily done by others upon his mere assent, whilst the examination and study of the invoices and entries, the statutes and decisions applicable to the subject, the preparation and settling the libel of information, matters all requiring deep professional learning and careful personal attention and labor, as also for attending court and taking measures to speed the cause and resist delays on the part of the claimants of the property seized, and to protect the interests of the United States against the admission of inadequate or incompetent bail, all involving his official and professional responsibility as well as the occupation of his time, are not specified in the act as services to be compensated, and if any fee is allowed for them it must be under the exposition given the statute by the attorney-general.

This case, it is stated, affords a weak instance of the operation of the law, because there is no reason to presume that the services of the attorney, out of court. in presenting and protecting the laws and interests of the government, were special or beyond those of the most ordinary classes of litigation. But it is to be remarked, that the rule governing the taxation of costs in this case must be applied to those of the highest magnitude, often falling under the management of the United States attorneys, in which the revenue is implicated to vast amounts of money, and which present the most intricate and perplexing questions of law and fact which the courts, on the law and equity side, are called upon to determine. For drawing and revising pleadings and proceedings in such cases, and advising and attending upon the various applications and motions made necessary out of court, the United States attorney can receive no compensation, unless the act of 1853 admits the construction put upon it by the attorney-general.

Feeling the impressive justice of the claims of the United States attorney in this case, and being also persuaded that the public interests are intimately concerned in providing a reasonable compensation to so important an officer in the position he occupies, for the services imposed upon him by law, I have reconsidered my former judgment in the matter, with a strong desire (I am conscious of no judicial impropriety in acknowledging the bias) to coincide with the opinion of the attorney-general, and to regard the failure of the act to make provision, in a case so manifestly important and just as a casus omissus. which it is competent to the court to supply by intendment and construction. The re-examination of the subject under such prepossession has failed to con-

vince me that the act admits the interpretation proposed. On the contrary, it appears to me that, carrying out the reasoning upon which the construction contended for is based, it not only in effect nullifies the statute, but enacts and re-establishes a law in its place which congress by this act expressly repudiated. The act of March 3, 1842 (5 Stat. 484), fixed the tariff of compensation to the officers of the United States in both districts of New York at the fees and emoluments allowed by the laws of the state of New York to like state officers in the highest court of original jurisdiction of the state, according to the nature of the proceedings, for like services therein. Those provisions congress declares by the act of February 26, 1853, confine these officers to the fees allowed by the state law, and then repeals the provisions themselves in express terms. 10 Stat. 167.

Taking the view of the subject most favorable to the claims of the United States attorney, this explicit abrogation of the law of 1842 placed the officers of the New York courts under the law of costs applicable to all other courts of the United States, or pre-existing usages and practices, particularly in reference to the courts of this state.

The act of March 3, 1841 (5 Stat. 427), had established a special law of costs for officers of the United States courts, to the following effect: "In lieu of all fees, emoluments, and receipts now allowed in districts where the present entire compensation of any of the officers hereinafter named shall exceed the sum of fifteen hundred dollars per annum, it shall and may be lawful for the United States clerks, attorneys, counsel, and marshals, in the district and circuit courts of the United States, in the several states, to demand and receive the same fees that now or hereafter may be allowed by the laws of the said states, respectively, where said courts are held to the clerks, attorneys, and counsel and sheriffs in the highest court of the said states, in which like services are rendered; and no other fees or emoluments, except that the marshals shall receive in full for summoning all the jurors for any one court, $30; and shall receive for every day's actual attendance at any court, $5 per day; and for any services, including the compensation for mileage performed by said officers in the discharge of their official duty, for which no compensation is provided by the laws of the said states, respectively, the said officers may receive such fees as are now allowed by law, according to the existing usage and practice of said courts of the United States,"—and limited the amount of fees and compensation to be retained by such officers. This law was in force in this state, in common with the rest of the Union, until modified and restricted in relation to the New York courts by the now repealed act of 1842. I apprehend there can be no ground to question that the act of February 26, 1853, operated a repeal of the act of 1841 not less effectually than that of 1842, both by the declared purpose and effect of the act of 1853, and also by force of the repealing enactment of section fifth.

It is to be remarked that the act of 1841 sanctioned the costs established by the long-established usage and practice of the United States courts, by declaring that in cases where no appropriate fee was provided by the state law in compensation of services rendered, "the said officers may receive such fees as are now allowed by law according to the existing usage and practice of said courts of the United States." The act of 1853 removes the distinction before existing between the officers of the United States courts in this state and those in other states, and then establishes a new law of costs governing the entire Union, declared to be "in lieu of the compensation now allowed by law" to those officers. To make this declaration more efficacious, congress not only introduces a general repealing clause in section 5, in the emphatic words "that all laws and regulations heretofore made, which are incompatible with the provisions of this act, are hereby repealed and abrogated;" but an enactment is superadded to the two above-stated methods of rescinding all antecedent laws on the subject, that "no district attorney, marshal or clerk, or their deputies, shall receive any other or greater compensation for any services rendered by him, than is provided in this act; and all acts and parts of acts, allowing to either of them any other or greater fees than is herein provided, are hereby repealed, and to receive any other or greater compensation is hereby declared to be a misdemeanor." 10 Stat. 169. The intention of congress to displace any authority in force by statute or usage, or discretion of courts, giving fees or costs to the officers named, and to establish the provisions of the act of 1853 as the exclusive law of costs to the United States' courts, it seems to me cannot be matter of doubt, under the declarations and interdictions of that act. The act signifies plainly that congress had in contemplation all antecedent legislation on the subject, and the existing usages and practice of the courts, from which was derived authority to award costs to the officers of court, and meant by direct and strong language to repudiate all of them, and, in lieu of every such power, to limit and confine costs to the specific appointments of the statute.

Only two items in the bill of costs now under consideration are named in the act of 1853. The others are taken from the state statutes and the usages and practice of the United States' courts in this district. To sanction their allowance would be, in my opinion, to reinstate the act of 1841, and to hold by judicial construction that the legislature intended to give those officers a suitable compensation for every service they are

required to perform, in contradiction to the positive assertions of the statute. It is not the province of the court to meet any equity, however urgent, by enacting a new law to satisfy it. The wisdom of congress deemed it expedient in this case to deny all fees and compensation to the United States attorney for instituting and managing a litigation, in support of the interests of the government, and to give him a reward only for discontinuing the cause. It is my duty to carry that will of the legislature into effect without consideration of the operation of the rule upon the rights of the officer or the interests of the public.

If the views of the attorney-general were to be adopted, there would be embarrassment, if not an utter impracticability, in attempting to bring this case within the principle announced by him, for I can find no service specified and compensated by the act, which bears an analogy to those charged for in this bill of costs, other than in this: that the services named in the statute have relation to conducting a suit in court, and those charged in this bill have that character, and in our system of practice are necessary to that end. With all respect for the judgment of the eminent public officer, I am compelled to say that it does not appear to me within the competency of the courts or accounting officers to introduce into this particular statute a method of compensation not designated and directly sanctioned by it. The taxation of the clerk is accordingly affirmed. This includes the charge of $5 for taking two depositions. The charge is in the words of the act, and the court must assume that the services have been rendered. The attorney is accordingly entitled to receive $5 for discontinuance of the cause, and $5 for two depositions taken and admitted as evidence in the cause, and the residue of charges for services appropriate to the case, and allowable under the laws as they existed prior to this statute, amounting to $35, must be disallowed.